Saman Movassaghi, Esq.
U.S. Immigration Law Counsel
3350 SW 148th Ave., Ste. 110
Miramar, FL 33207
Telephone: (954) 240-1669
Email: saman@fl-ilc.com
Florida Bar No.: 676527
*Attorney for Petitioner*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JESSICA ENRIQUEZ, ALBERTO SOJO, MARIANO SOJO GONZALEZ, FAIZA SEIF,  AMPARO BACALLAO GONZALEZ, and FRANTZ SENATUS <br><br>        Plaintiffs, <br><br>   v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; <br> MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; <br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; <br> JOSEPH B. EDLOW, Director, United States Citizenship and Immigration Services, <br><br>        Defendants. | Case No. 1:26cv23399 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR A PRELIMINARY INJUNCTION

1

## I.   <u>INTRODUCTION</u>

This case challenges Defendants' adoption of a binding policy that categorically prevents adjudication of Plaintiffs' pending immigration benefit applications. Plaintiffs do not seek review of any discretionary determination; they challenge Defendants' refusal to render any decision at all.

Defendants' policy imposes an adjudicatory hold prohibiting approvals, denials, or dismissals, placing Plaintiffs into indefinite administrative limbo. Plaintiffs are likely to succeed because this refusal to adjudicate violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, including §§ 706(1) and 706(2)(A), and exceeds statutory authority. Absent relief, Plaintiffs face irreparable harm, including loss of status, employment, and protection from removal.

### A.  Background

*i.      The Challenged Policies*

This case arises from a series of USCIS policy directives issued in late 2025 and early 2026 that materially altered adjudication of immigration benefit applications filed within the United States.

USCIS issued Policy Alert PA-2025-26[1], which directs adjudicators to treat nationality-based considerations derived from presidential proclamations as significant negative discretionary factors when evaluating immigration benefit applications. USCIS subsequently issued Policy Memorandum PM-602-0192[2], which imposed an adjudicatory

---

[1] *See* **Exhibit 1 -** U.S. Citizenship and Immigration Services, Policy Alert PA-2025-26, Discretionary Considerations Based on Country-Specific Risk Factors (Nov. 27, 2025)

[2] See **Exhibit 2** - U.S. Citizenship and Immigration Services, Policy Memorandum PM-602-0192, Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries (Dec. 2, 2025)

"hold" on multiple categories of immigration benefit applications filed by noncitizens from designated countries. The memorandum prohibits adjudicators from issuing final decisions—including approvals, denials, or dismissals—pending completion of a comprehensive internal review.

USCIS later expanded the policy through PM-602-0194 [3], extending the adjudicatory hold to additional nationalities.

### ii.       Operation of the Adjudicatory Hold

As implemented, the challenged policies do not merely affect how applications are adjudicated—they prevent adjudication from occurring at all. USCIS officers are prohibited from issuing final decisions on covered applications regardless of whether an applicant is otherwise eligible for relief.

USCIS has publicly acknowledged that the memoranda "placed on hold" covered benefit requests while the agency continues reviewing its procedures[4]. The policies identify no fixed timeline or objective criteria governing when adjudications may resume.

The challenged framework therefore eliminates not only approvals, but also denials. Applications remain indefinitely pending without resolution.

### iii.      Lack of Connection to Existing Adjudicative Framework

The challenged policies were implemented against the backdrop of an existing statutory and regulatory framework that already incorporates extensive vetting mechanisms, including biometric screening, interagency background checks, and continuous monitoring.

---

[3] *See* **Exhibit 3** – U.S. Citizenship and Immigration Services, Policy Memorandum PM-602-0194, Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries (Jan. 1, 2026)
[4] *See* **Exhibit 4** - U.S. Citizenship and Immigration Services, Update on USCIS' Strengthened Screening and Vetting (Mar. 30, 2026).

The memoranda do not explain why those procedures became inadequate or why categorical suspension of adjudications was necessary.

### iv.   Impact on Plaintiffs

Plaintiffs have filed applications within USCIS's jurisdiction and complied with all procedural requirements. Several Plaintiffs have completed all steps necessary for adjudication and are awaiting final decisions.

Because of the challenged policies, however, USCIS will not adjudicate their applications. Plaintiffs consequently face loss of employment authorization, prolonged inability to obtain lawful permanent residence or citizenship, and impairment of immigration relief available in removal proceedings.

### v.   Absence of Defined Endpoint or Limiting Principle

A defining feature of the challenged policies is the absence of any meaningful limitation on duration. Resumption of adjudications depends entirely on completion of an unspecified internal review process controlled by agency leadership.

Applicants therefore have no ability to determine when—or whether—their applications will be adjudicated.

## B. Legal Standard

A preliminary injunction requires a showing of: "(1) a substantial likelihood of success on the merits; (2) irreparable injury absent relief; (3) the threatened injury outweighs any damage the injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). The Eleventh Circuit has recognized that a substantial likelihood of success on the merits is "generally the most important." *Gonzalez v. Governor*

*of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020). Moreover, "[t]he third and fourth factors merge when, as here, the government is the opposing party." *Gonalez*, 978 F.3d at 1271.

The Court's review of whether agency action is arbitrary and capricious is narrow but must be "searching and careful." *Marsh v. Or. Natural Res. Council*, 790 U.S. 360, 378 (1989). The Court must ensure that the agency's decisions are based on a consideration of the relevant factors, and that it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its actions including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass. Of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. Of Wildlife*, 551 U.S. 644, 658 (2007).

Under the APA, courts must "hold unlawful and set aside agency action" that is arbitrary, capricious, contrary to law, in excess of statutory authority, or unlawfully withheld. 5 U.S.C. §§ 706(1), (2)(A), (C).

## II.   ARGUMENT

Plaintiffs satisfy each requirement for preliminary injunctive relief. The challenged policies categorically suspend adjudication of applications Congress and agency regulations require USCIS to decide. Plaintiffs are likely to succeed on the merits, face continuing irreparable harm absent relief, and the balance of equities and public interest strongly favor an injunction. See *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).

### A. Threshold Legal Issues Do Not Bar Review

The challenged policies constitute final agency action because they impose a binding adjudicatory hold that determines whether covered applications may be adjudicated at all. The memoranda therefore represent the consummation of agency decision-making and carry direct legal consequences.

Nor does 8 U.S.C. § 1252(a)(2)(B) bar review. Plaintiffs do not challenge discretionary decisions granting or denying immigration benefits. Rather, Plaintiffs challenge Defendants' refusal to adjudicate applications altogether. Courts routinely distinguish between review of discretionary outcomes and review of a failure to act.

Defendants' conduct likewise is not committed to agency discretion by law. The APA requires agencies to conclude matters presented to them within a reasonable time. 5 U.S.C. § 555(b). Although USCIS may exercise discretion regarding substantive outcomes, it lacks discretion to categorically refuse to adjudicate applications.

### B. Likelihood of Success

Plaintiffs are likely to prevail on the merits because Defendants' policies are contrary to law, exceed Defendants' statutory authority, and violate the APA in multiple independent respects.

### C. APA Violations – Agency Action Contrary to Law and in Excess of Statutory Authority (5 U.S.C. § 706(2)(A))

The APA requires courts to "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). The challenged adjudicatory hold conflicts with statutes and regulations requiring USCIS to adjudicate immigration benefit applications.

Although Defendants retain discretion regarding the ultimate disposition of certain immigration benefits, that discretion does not authorize a categorical refusal to adjudicate applications altogether. The distinction between discretion over outcomes and the duty to render a decision is fundamental.

Congress repeatedly imposed mandatory adjudicatory obligations through the INA's use of the term "shall." See *Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("the word 'shall' usually creates a mandate"); *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 362 (2018) ("The word 'shall' generally imposes a nondiscretionary duty.").

For naturalization applications, Congress directed that immigration officers "shall conduct examinations" and "shall make a determination" whether an application should be granted or denied. 8 U.S.C. §§ 1446(b), (d). Congress further authorized judicial intervention where USCIS fails to adjudicate a naturalization application within 120 days following examination. *Id*. § 1447(b).

Similarly, Congress directed that asylum applications ordinarily "shall" be adjudicated within 180 days absent exceptional circumstances. *Id*. § 1158(d)(5)(A)(iii).

USCIS regulations governing adjustment applications likewise provide that "[t]he applicant shall be notified of the decision of the director." 8 C.F.R. § 245.2(a)(5)(i). Employment authorization regulations similarly require USCIS to notify applicants of approvals or denials. See 8 C.F.R. § 274a.13(c).

These provisions impose a mandatory duty to adjudicate. Defendants' policies directly conflict with that command by indefinitely halting adjudication of covered applications without individualized findings or statutory authorization. The government

does not contend that the statutory "exceptional circumstances" provision applicable to asylum adjudications applies here.

An agency acts contrary to law when it fails to comply with its own regulations. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004). Defendants' policies conflict not only with statutory mandates, but also with Defendants' own regulatory framework.

Defendants may argue that statutory provisions authorizing discretionary relief permit indefinite adjudicatory holds. But statutes conferring discretionary authority concern substantive outcomes—not whether applications may be adjudicated at all. For example, although adjustment of status under 8 U.S.C. § 1255(a) may be granted "in [the Attorney General's] discretion," USCIS regulations still require the agency to issue decisions on adjustment applications. See 8 C.F.R. § 245.2(a)(5)(i).

Nor does 8 C.F.R. § 103.2(b)(18) authorize the challenged policies. That regulation permits temporary withholding of adjudication in connection with an individual investigation under limited circumstances. It does not authorize blanket suspension of adjudications across broad categories of applications. See *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1168 (N.D. Cal. 2007); *Saghafi v. Edlow*, No. 26-cv-100-GLR, 2026 WL 1127468, at *5 (D. Md. Apr. 24, 2026); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *10 (N.D. Cal. Feb. 20, 2026).

The APA independently reinforces these obligations. Section 555(b) requires agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). Defendants' policies replace individualized adjudication with indefinite administrative suspension.

Defendants' reliance on presidential proclamations restricting "entry" into the United States likewise fails. Those proclamations invoke authorities governing entry restrictions. See 8 U.S.C. §§ 1182(f), 1185(a). They do not authorize USCIS to suspend adjudication of applications filed by individuals already present within the United States. See Varniab, 2026 WL 485490, at *19.

Finally, the challenged policies conflict with the INA's individualized adjudicatory framework by imposing nationality-based barriers untethered from case-specific eligibility determinations. Nothing in the INA authorizes USCIS to suspend adjudications indefinitely while developing future screening procedures.

Because Defendants have substituted a policy of categorical non-adjudication for the individualized adjudicatory framework required by statute and regulation, Plaintiffs are likely to succeed in demonstrating that the challenged policies are contrary to law and must be set aside under 5 U.S.C. § 706(2)(A).

**D. APA Violations – Arbitrary and Capricious Agency Action (5 U.S.C. § 706(2)(A))**

Even if Defendants possessed authority to alter adjudicatory procedures in this manner, the challenged policies are independently arbitrary and capricious under the APA because they rely on entry-related presidential proclamations to justify suspending adjudications for applicants already present in the United States, departing from longstanding practice without adequate explanation or evidentiary support. *See* 5 U.S.C. § 705; *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020).

*i.      Failure to Provide a Reasoned Explanation*

Agencies must provide a reasoned explanation when altering how they carry out statutory responsibilities. *Judulang v. Holder*, 565 U.S. 42, 45 (2011).

Here, Defendants identify no meaningful evidence or analysis supporting suspension of adjudications across broad categories of applicants already present in the United States. Beyond generalized references to national security concerns, the memoranda contain no explanation why existing screening mechanisms became inadequate.

USCIS already employs extensive vetting procedures, including biometric screening, interagency background checks, and ongoing monitoring systems. Yet Defendants never explain why those procedures could not continue while adjudications proceeded.

USCIS also acknowledges that it is still developing enhanced vetting procedures and adjudicatory guidance. *See* **Exhibit 4.** The agency therefore suspended adjudications before developing the framework allegedly necessary to support the suspension.

Defendants likewise failed to consider applicants' reliance interests or the substantial harms imposed by prolonged non-adjudication, including disruption to lawful status, employment authorization, and available immigration relief. Such omissions further demonstrate arbitrary and capricious decision-making. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

*ii.     Failure to Consider Alternatives*

Defendants' policies are also arbitrary and capricious because the agency failed to consider obvious and less disruptive alternatives to the categorical adjudicatory hold.

An agency engaged in reasoned decision-making must consider "alternatives . . . within the ambit of the existing policy." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020

There is no indication Defendants considered maintaining existing adjudicatory procedures while implementing enhanced screening measures, conducting additional

10

individualized investigations where warranted, increasing supervisory review, or applying heightened scrutiny on a case-by-case basis.

Those alternatives were plainly available. USCIS already possesses extensive vetting mechanisms designed to identify potential security concerns. Nevertheless, Defendants adopted the most sweeping option available: categorical suspension of adjudications.

Courts reviewing similar adjudicatory hold policies have recognized that failure to consider narrower alternatives strongly supports a finding of arbitrary and capricious action. *See Varniab*, 2026 WL 485490, at \*33; *Doe v. Trump*, No. 1:25-cv-13946-JEK, slip op. at 40 (D. Mass. Apr. 30, 2026).

### iii.   *Internally Inconsistent and Irrational Policy Design*

The challenged policies are also arbitrary because their structure undermines Defendants' stated objectives.

Defendants assert that the policies are necessary to advance national security interests. Yet the adjudicatory hold prohibits officers from issuing final decisions of any kind—including denials. As a result, applications submitted by individuals who may present security concerns remain pending indefinitely rather than being adjudicated and, where appropriate, denied.

That contradiction undermines the rationale offered for the policies. A framework genuinely designed to enhance security would ordinarily prioritize identification and disposition of problematic applications. Instead, Defendants suspended the very adjudicative process through which such determinations are ordinarily made.

The policies also impede development of administrative records necessary for later enforcement action. Under ordinary practice, denials often form the basis for removal

proceedings or other enforcement measures. By preventing adjudications altogether, the challenged framework eliminates that mechanism.

Unexplained inconsistency in agency reasoning is a hallmark of arbitrary and capricious action. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016). Defendants offer no explanation for adopting a policy that frustrates its own asserted objectives or for failing to consider whether indefinite administrative suspension increases, rather than reduces, potential risk.

### E. APA Violations – Unlawful Withholding and Unreasonable Delay (5 U.S.C. § 706(1))

Defendants' conduct independently violates the APA because the challenged policies unlawfully withhold agency action Defendants are required to perform.

Section 555(b) requires agencies to conclude matters presented to them within a reasonable time, and § 706(1) authorizes courts to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1).

This case does not involve ordinary processing delays arising from resource limitations or individualized review. Rather, Defendants adopted an affirmative policy prohibiting adjudicators from issuing final decisions on covered applications.

USCIS itself confirmed that the challenged memoranda "placed on hold" covered benefit requests while the agency continues reviewing whether and when such holds may later be lifted. *See* **Exhibit 4.**

Because the policies categorically prevent adjudication of Plaintiffs' applications without any meaningful timetable for resolution, they constitute agency action unlawfully withheld within the meaning of § 706(1).

**F.  APA Violations – Action Without Observance of Required Procedures (5 U.S.C. § 706(2)(D))**

The challenged policies also reflect agency action taken without observance of procedures required by law.

Although framed as internal guidance, the policies operate as binding rules determining whether adjudications may occur at all. By replacing ordinary individualized adjudication with categorical adjudicatory holds and mandatory negative discretionary factors, Defendants implemented substantive policy changes carrying significant legal consequences.

Defendants nevertheless issued the memoranda without notice-and-comment procedures or development of an administrative record supporting the changes.

To the extent the challenged policies function as binding rules governing adjudicatory outcomes and preventing adjudication altogether, they exceed the scope of permissible internal guidance and are procedurally invalid under 5 U.S.C. § 706(2)(D).

**G.  Ultra Vires Action – Adjudicatory Hold Exceeds Statutory Authority (8 U.S.C. § 1182(f))**

Defendants' hold policy is ultra vires because it relies on presidential authority governing entry into the United States rather than domestic adjudication of immigration applications.

Section 1182(f) authorizes the President to "suspend the entry" of noncitizens when their entry would be detrimental to national interests. 8 U.S.C. § 1182(f). By its text and structure, the provision governs entry restrictions, not USCIS adjudication of applications filed by individuals already present within the United States.

The challenged policies operate entirely in the domestic adjudication context. They prevent USCIS from issuing decisions on applications already properly filed within the United States.

Nothing in § 1182(f) authorizes USCIS to suspend that adjudicatory function categorically or indefinitely.

Congress separately assigned USCIS responsibility to adjudicate immigration benefit applications within the United States. See 6 U.S.C. § 271(b). Agencies possess only the authority granted by Congress, and actions exceeding that authority are invalid. See *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109 (2022).

Because Defendants rely on authority limited to entry regulation rather than domestic adjudication, the challenged adjudicatory hold exceeds statutory authority.

## H. Ultra Vires Action – Categorical Negative Factor Policy Violates 8 U.S.C. § 1152(a)(1)(A)

The categorical "significant negative factor" policy independently conflicts with Congress's prohibition on nationality-based discrimination in the issuance of immigration benefits.

Section 1152(a)(1)(A) provides that "no person shall … be discriminated against in the issuance of an immigrant visa because of the person's nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A).

The challenged policy imposes nationality-based discretionary disadvantages untethered from individualized circumstances. Courts have recognized that § 1152(a)(1)(A) applies to agency policies introducing nationality-based presumptions into immigration adjudications. *See Doe v. Trump,* No. 1:25-cv-13946-JEK, slip op. at 33–35 (D. Mass. Apr. 30, 2026).

14

Although Defendants may exercise discretion in evaluating applications, that discretion must be exercised on an individualized basis. The challenged policy instead embeds nationality as an independent negative factor affecting adjudicatory outcomes.

Because the policy introduces nationality-based considerations into immigration adjudication in violation of § 1152(a)(1)(A), it is contrary to law.

## I.   Plaintiffs Will Suffer Irreparable Harm If Relief Is Not Granted

Plaintiffs face continuing irreparable harm resulting directly from Defendants' refusal to adjudicate their applications:

### i.        *Adjustment of Status Application Halted*

Plaintiff Jessica Enriquez has filed family-based immigrant petitions[5] on behalf of her spouse and stepchild, Plaintiffs Alberto Sojo and Mariano Sojo Gonzalez, and those petitions remain pending before USCIS Plaintiffs Sojo and Sojo Gonzalez subsequently filed for adjustment of status[6] based on those petitions. Despite full compliance with statutory and regulatory requirements, these applications remain indefinitely pending with no projected adjudication date as a result of Defendants' adjudicatory hold.

The challenged policies have effectively frozen adjudication of these applications because Plaintiffs Alberto Sojo and Mariano Sojo Gonzalez are Venezuelan nationals and therefore fall within the categories subject to the blanket adjudication pause.

The harm to these Plaintiffs is particularly acute because both are currently in removal proceedings[7]. As alleged in the Complaint, adjudication of an I-130 petition is a

---

[5] *See* **Exhibits 7A and 7B** - Form I-797C, Notice of Action for Plaintiff Jessica Enriquez's Form I-130 Petitions.

[6] *See* **Exhibits 8A and 8B** - Form I-797C, Notice of Action for Plaintiff Sojo and Plaintiff Sojo Gonzalez's Form I-485 Petitions.

[7] *See* **Exhibits 9A and 9B** – Notices to Appear issued to Plaintiff Sojo and Plaintiff Sojo Gonzalez.

necessary predicate to seeking relief from removal through adjustment of status before the Immigration Court. By declining to adjudicate Plaintiff Enriquez's I-130 petitions, Defendants are not merely delaying administrative processing—they are effectively foreclosing Plaintiffs Alberto Sojo and Mariano Sojo Gonzalez from pursuing available relief in their removal proceedings. This is not a speculative harm; it is a direct and foreseeable consequence of Defendants' refusal to adjudicate applications within their control.

The same policies impose comparable—and in some respects even more severe—harms on Plaintiff Frantz Senatus. Mr. Senatus has a pending Form I-360 petition under the Violence Against Women Act ("VAWA"), through which he seeks humanitarian relief based on abuse suffered at the hands of his U.S. citizen spouse. His I-360, along with an accompanying I-485 petition, have been pending since early 2025, and USCIS has taken no final action on his case during that time, despite the agency having already issued a prima facie determination recognizing the sufficiency of his claim at the threshold level.[8]

The challenged adjudicatory hold has compounded this already significant delay. Because Mr. Senatus is a Haitian national, his petition now falls squarely within the categories affected by Defendants' blanket policies, further ensuring that no adjudicative action will occur in the foreseeable future. This additional delay is not attributable to case-specific circumstances, but rather to the imposition of a categorical hold untethered from the merits of his application.

The consequences of this inaction are particularly acute in the VAWA context. Congress created the self-petition process to provide vulnerable individuals with an

---

[8] *See* **Exhibits 10A-10C -** Form I-797C, Notice of Action for Plaintiff's I-360, Plaintiff's Prima Facie Determination, and Form I-797C, Notice of Action for Plaintiff's I-485.

independent pathway to status that does not depend on an abusive spouse. By refusing to adjudicate Mr. Senatus's petition, Defendants are effectively suspending access to that statutory protection, leaving him in prolonged uncertainty despite having already established prima facie eligibility.

Unlike routine processing delays, the indefinite nature of the adjudicatory pause deprives Mr. Senatus of any meaningful opportunity to obtain a timely determination on a humanitarian claim grounded in past abuse. This not only undermines the purpose of the VAWA statutory framework but also imposes ongoing and irreparable harm, as he remains without resolution of his immigration status solely due to Defendants' refusal to adjudicate pending petitions.

    ii.      *Removal of Conditional Permanent Resident Status Halted*

The adjudicatory hold similarly exacerbates the harms faced by Plaintiff Faiza Seif in connection with her pending Form I-751, Petition to Remove Conditions on Residence. Ms. Seif timely filed her I-751 petition[9], which has now been pending for nearly two years without resolution. Under ordinary processing, adjudication of the I-751 would confirm her status as a lawful permanent resident without conditions and serve as a necessary prerequisite to the continued progression of her naturalization application.

Instead, because Ms. Seif is a Yemeni national subject to the policies at issue, Defendants' adjudicatory hold has further delayed resolution of her petition with no defined endpoint. This prolonged inaction leaves her in an extended period of conditional status, contributes directly to the stagnation of her naturalization process, and perpetuates

---

[9] *See* **Exhibit 5** - Form I-797C, Notice of Action for Plaintiff Seif's I-751.

ongoing uncertainty regarding her ability to secure permanent immigration status on a stable and predictable timeline.

### iii.    *Naturalization Application Halted*

In addition to having a pending unadjudicated Form I-751, Plaintiff Faiza Seif has completed all necessary steps toward becoming a United States citizen by filing her N-400, Application for Naturalization[10]. However, the naturalization process has effectively been halted as a result of Defendants' adjudicatory hold. The Plaintiff's naturalization interview has been indefinitely delayed, depriving her of the ability to obtain citizenship despite years of lawful residence and despite having filed her application for naturalization several months *before* the issuance of the Defendants' policy memoranda.

This loss of the opportunity to finalize naturalization constitutes irreparable harm, as citizenship carries "high and inestimable privileges," as recognized in the early debates surrounding the Nation's naturalization laws. 1 ANNALS OF CONG. 1147–64 (1790) (Joseph Gales ed., 1834). The delayed realization of these rights and benefits cannot be adequately remedied after the fact.

### iv.    *Loss of Legal Status and Work Authorization*

The challenged policies likewise impose immediate and irreparable harm on Plaintiff Amparo Bacallao Gonzalez by placing her lawful presence and employment authorization at risk. Ms. Bacallao Gonzalez has filed a timely request to renew her deferred action status under the Deferred Action for Childhood Arrivals ("DACA") program (Form I-821D), along with a corresponding application for employment

---

[10] *See* **Exhibit 6** - Form I-797C, Notice of Action for Plaintiff Seif's N-400.

18

authorization (Form I-765), both of which remain pending before USCIS[11]. Despite having complied with all filing requirements, her applications have not been adjudicated, and no decision is forthcoming as a result of Defendants' adjudicatory hold. Because Ms. Bacallao Gonzalez is a Venezuelan national, her applications fall within the categories subject to the challenged policies, further ensuring continued inaction.

As a direct consequence, Ms. Bacallao Gonzalez faces the imminent expiration of her current employment authorization document on July 9, 2026[12]. Absent timely adjudication of her renewal applications, she will lose authorization to work in the United States, jeopardizing her current employment and financial stability. This harm is neither speculative nor remote—it is immediate and foreseeable, flowing directly from Defendants' refusal to adjudicate her pending applications.

The loss of employment authorization—and the attendant risk of job loss— constitutes irreparable harm that cannot be remedied after the fact. Courts have consistently recognized that the inability to lawfully work and maintain financial independence imposes substantial and non-compensable injury. Here, those harms are compounded by the fact that Ms. Bacallao Gonzalez has taken all necessary steps to renew her status, yet remains at risk solely because of Defendants' blanket suspension of adjudications.

**J. The Balance of Equities And Public Interests Weigh In Favor Of Preliminary Relief**

The balance of equities and public interest strongly support preliminary relief. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). Where the government is the opposing party, the balance of harms and the public interest

---

[11] *See* **Exhibits 11A and 11B** - Form I-797C, Notice of Action for Plaintiff Bacallao Gonzalez's Form I-821D and Form I-765 applications.
[12] *See* **Exhibit 11C** - Plaintiff Bacallao Gonzalez's Employment Authorization Document.

considerations substantially overlap. See *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020).

Plaintiffs face continuing harms resulting from Defendants' refusal to adjudicate their applications, including loss of lawful status, interruption of employment authorization, impairment of immigration relief, and prolonged uncertainty regarding their legal status.

By contrast, Defendants cannot identify any cognizable harm resulting from an order requiring USCIS to resume the adjudicatory functions Congress assigned to it.

Defendants likewise offer no evidence that national security would be compromised if USCIS continued adjudicating applications using existing statutory and regulatory screening procedures. To the contrary, the challenged policies suspend the very processes designed to identify security concerns through individualized review.

Moreover, the policies impose significant and foreseeable harms on Plaintiffs and similarly situated individuals, including the loss of work authorization, potential lapses in lawful status, and disruption to long-term immigration pathways such as adjustment of status and naturalization. These consequences place Plaintiffs in increasingly precarious positions—effects that, as alleged in the Complaint, Defendants did not meaningfully consider in adopting the challenged policies.

The public interest further supports injunctive relief. It is well established that there is no public interest in the continued enforcement of unlawful agency action. *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor can the government claim harm from an order requiring compliance with governing law. See *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017). To the contrary, the public has a strong

and independent interest in ensuring that federal agencies operate within the limits of their statutory authority and adhere to the requirements of the APA. *Gulf Coast Mar. Supply, Inc. v. United States*, 218 F. Supp. 3d 92, 101 (D.D.C. 2016), aff'd, 867 F.3d 123 (D.C. Cir. 2017).

In sum, compelling Defendants to resume adjudicating applications in accordance with the law imposes no undue burden on the agency, while denying relief would subject Plaintiffs to continuing and irreparable harm. The balance of equities and the public interest therefore strongly support the issuance of a preliminary injunction.

### III.     CONCLUSION

Defendants have implemented a policy that prevents adjudication of pending applications without legal authority and without a defined endpoint. Plaintiffs have demonstrated a likelihood of success, irreparable harm, and that the balance of equities and public interest favor relief.

For these reasons, Plaintiffs respectfully request that the Court grant their Motion for a Preliminary Injunction.

Respectfully submitted this 8th day of June, 2026,

Respectfully Submitted,

Saman Movassaghi, Esq.
*Attorney for Plaintiffs*
Florida Bar No. 676527
U.S. Immigration Law Counsel
3350 SW 148th Ave., Ste. 110
Miramar, FL 33207
Telephone: (954) 240-1669
Email: saman@fl-ilc.com

21